# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| The ERISA Industry Committee, National Labor Alliance of Health Care Coalitions, The Cigna Group, and Cigna Health and Life Insurance Company, | Case No. 24-cv-04639 (KMM-SGE) |
| Plaintiffs, | **ORDER** |
| vs. | |
| Minnesota Department of Commerce and Grace Arnold, in her official capacity as Commissioner, | |
| Defendants. | |

This matter is before the Court on Defendants' Motion to Compel Discovery and Modify Scheduling Order. (Dkt. 50.) The Court heard oral argument on the motion on January 5, 2026. (Dkt. 69.) For the reasons that follow the Motion is granted in part and denied in part.

## BACKGROUND

This litigation concerns a challenge to Minnesota Statute § 62W.07. Plaintiffs claim the statute is preempted by the Employee Retirement Income Security Act (ERISA), and that it is being applied extraterritorially in violation of the Constitution. (Dkt. 1 ¶¶ 106-115.) The Complaint was filed on December 27, 2024. (Dkt. 1.) On January 21, 2025, Defendants Minnesota Department of Commerce and Minnesota Commissioner of Commerce Grace Arnold (collectively "the Department") answered the Complaint. (Dkt.

14.) On February 13, 2025, the parties met and conferred to complete the required Federal Rule of Civil Procedure 26(f) report. (*See* Dkt. 60 at 2; Dkt. 63 at 7.)[1] On March 3, 2025, the parties filed their Rule 26(f) report with the Court. (Dkt. 16.) The Court held a pretrial conference pursuant to Federal Rule of Civil Procedure 16 on March 11, 2025. (*See* Dkt. 17.) At the pretrial conference Plaintiffs argued against allowing discovery and instead advocated for filing early summary judgment motions. The Department countered that discovery was necessary. Following the conference, the parties were ordered to file letters to the Honorable Katherine M. Menendez explaining their positions on discovery and early summary judgment motions. (Dkt. 18.) On April 9, 2025, Judge Menendez entered an Order concluding that "Defendants should be allowed to conduct necessary discovery prior to litigating summary judgment" and denied Plaintiffs' "request to design the schedule to preclude discovery entirely or allow it only pursuant to Fed. R. Civ. P. 56(d)." (Dkt. 21.) On April 11, 2025, the Court entered a Pretrial Scheduling Order. (Dkt. 22.) Under the Pretrial Scheduling Order, fact discovery was to close on October 24, 2025. (*Id.* at 2.)

Following entry of the Pretrial Scheduling Order, the Department mailed interrogatories and requests for production to Plaintiffs on July 17, 2025. (Dkt. 54 ¶ 2; Dkt. 54-3.) Thereafter, the Department agreed to give Plaintiffs an extension to respond to the discovery requests until two weeks after the Court resolved their first discovery dispute through informal dispute resolution ("IDR") on August 19, 2025. (*See* Dkt. 54 ¶ 3; Dkt. 39.) On August 25, 2025, Plaintiffs requested a second extension to respond to The

---

[1] Page number citations to materials filed on the docket are citations to the CM/ECF pagination in the top right-hand corner, unless otherwise noted.

Department's discovery requests, which the Department granted. (Dkt. 54 ¶ 5.) A day before the extended due date The Cigna Group and Cigna Health and Life Insurance Company (collectively "Cigna") requested a third extension to respond to the Department's interrogatories, which the Department again granted. (*Id.* ¶ 5.)

On September 16, 2025, Plaintiffs, The ERISA Industry Committee ("ERIC") and National Labor Alliance of Health Care Coalitions ("NLA"), responded to the Department's interrogatories. (*Id.* ¶ 6; Dkts. 54-6, 54-7, 54-8, 54-9.) Cigna also responded to the Department's requests for production on September 16, 2025. (Dkt. 54-11.) And on September 19, 2025, Cigna responded to the Department's interrogatories. (Dkt. 54 ¶ 6; Dkt. 54-10.) However, none of the Plaintiffs actually produced documents in September. (Dkt. 54 ¶ 6.)

NLA produced documents on October 3, 2025. (*Id.* ¶ 7.) Cigna produced documents on October 10, 2025. (*Id.* ¶ 8.) And ERIC produced documents on October 15, 2025. (*Id.* ¶ 9.) After reviewing the documents, the Department sent the Plaintiffs a deficiency letter on October 21, 2025. (*Id.* ¶ 10.) On October 31, 2025, ERIC and NLA responded to the Departments' deficiency letter and the parties met and conferred on November 3, 2025. (*Id.* ¶¶ 12-14.). Cigna responded to the deficiency letter on November 5, 2025 and the parties met and conferred on November 7, 2025. (*Id.* ¶¶ 13-15.) Thereafter, on November 19, 2025, Cigna made a third document production. (*Id.* ¶ 17.) On November 21, 2025, the parties held a third meet and confer, and on November 25, 2025, they exchanged a draft email to the Court regarding the outstanding discovery issues (*Id.* ¶¶ 18, 19.) The parties then emailed the Court on December 3, 2025, seeking a resolution of the

3

dispute. On December 17, 2025, Cigna provided a supplemental interrogatory response and document production. (*Id.* ¶ 21; Dkts. 54-22, 55-3) On December 19, 2025, the Department filed their motion. (Dkt. 50.)

## ANALYSIS

### I.    Motion to Modify Scheduling Order

The Department seeks to reopen discovery and extend all remaining deadlines in the Pretrial Scheduling Order. Plaintiffs argue that the Department cannot demonstrate good cause pursuant to Rule 16(b) of the Federal Rules of Civil Procedure because it has not been diligent in conducting discovery and has not demonstrated "extraordinary circumstances" as required by Local Rule 16.3(d).

The federal rules provide that the Pretrial Scheduling Order "may be modified only for good cause." Fed. R. Civ. P. 16(b)(4). The primary measure of good cause is "the movant's diligence in attempting to meet the [scheduling] order's requirements." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008) (cleaned up). Put differently, the "good cause" standard "demands a demonstration that the existing schedule cannot be reasonably met despite the diligence of the party seeking the extension." *Scheidecker v. Arvig Enters.*, 193 F.R.D. 630, 632 (D. Minn. 2000) (cleaned up). As with other scheduling matters, the good cause showing "falls within the magistrate judge's broad discretion." *Shank v. Carleton Coll.*, 329 F.R.D. 610, 614 (D. Minn. 2019). "[W]hile diligence is the primary factor for assessing good cause, nothing limits the Court's 'broad discretion in establishing and enforcing the deadlines' in the scheduling order." *Portz v. St. Cloud State Univ.*, No. 16-cv-1115 (JRT/LIB), 2017 WL 3332220, at *3 (D. Minn. Aug. 4, 2017)

(quoting *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 (8th Cir. 2006)).

Moreover, the Local Rules of this District require a motion to modify a scheduling order be made before the deadline the party seeks to extend has passed, except in extraordinary circumstances. D. Minn. LR 16.3(d); *see Coleman v. Minneapolis Pub. Schs.*, No. 18-cv-2283 (DSD/ECW), 2020 WL 6042394, at * 4 (D. Minn. Oct. 13, 2020) (finding party had not demonstrated "the 'extraordinary circumstances' required under Local Rule 16.3(d) to excuse the fact that he sought modification of the fact discovery deadline after that [] deadline had passed").

Here, the deadline to complete fact discovery was October 24, 2025. (Dkt. 22 at 2.) The Department emailed the Court about extending the scheduling order deadlines, several weeks later on December 3, 2025 and filed its current motion to reopen discovery and extend all remaining deadlines on December 19, 2025. (Dkt. 50.) Thus, the Department's motion is untimely and must be reviewed for good cause and extraordinary circumstances. Fed. R. Civ. P. 16(b)(4), D. Minn. LR 16.3(d).

Based on the record before the Court and the arguments of counsel, the Court determines that the Department has not shown good cause to modify the scheduling order. As far as the Court can discern from the Department's briefing,[2] the only cause the Department provides to reopen discovery is that Plaintiffs failed to adequately and timely respond to discovery. (Dkt. 52 at 26-27.) However, the Department repeatedly granted

---

[2] Notably, the Department did not allege in its briefing that it has been "diligent," despite conceding the primary measure of good cause is diligence in attempting to meet the scheduling order deadlines. (Dkt. 52 at 25-26.)

extensions to Plaintiffs, the last of which placed the response due date only one month before the close of discovery.

Pursuant to the agreed upon extensions, Plaintiffs produced answers to interrogatories on September 16 and 19, 2025 but did not produce responsive documents until October. The Department then waited until October 21, 2025 to send a deficiency letter to Plaintiffs, only three days before the close of discovery. At the hearing the Department explained it waited to send the deficiency letter in case Plaintiffs' document productions supplemented their interrogatory responses. But the Department cannot now claim that Plaintiffs' late responses caused the need to extend discovery when it consented to the late productions and knew before the deadline that the productions were insufficient. *See Zarling v. Abbott Lab'ys*, No. 21-cv-0023 (MJD/JFD), 2022 WL 1598232, at * 5 (D. Minn. May 20, 2022) (finding no good cause to amend pretrial order where the party agreed to take depositions after the deadline); *Fair Isaac Corp. v. Experian Info. Sols., Inc.*, No. 06-cv-4112 (ADM/JSM), 2009 WL 10677528, at * 13 (D. Minn. July 10, 2009) (finding lack of diligence where party knew that discovery production was agreed to occur only one week before the deadline but did not request the deadline be extended).

Moreover, the Department explained at the hearing that it chose to wait to modify the scheduling order until after the deadline because it wanted to combine its motion to modify and motion to compel to avoid having to appear before the court two different times on two different motions. The Court cannot find the Department acted with diligence where it believed modification to the scheduling order would be necessary before the deadline

had passed and knowingly allowed the deadline to pass instead of seeking an extension.[3]

*See Adams v. Citimortgage, Inc.*, No. 12-cv-11 (SRN/JSM), 2013 WL 12145855, at * 2

(D. Minn. Dec. 9, 2013) (explaining lack of diligence where defendant's "tactical decision

to pursue no discovery or relief from this Court within the timeframes afforded by the

Court" was a "strategic decision that defendant was within its rights to make, but one that

it made at its own peril"); *Kutz v. NGI Cap., Inc.*, No. 22-cv-1623 (NEB/ECW), 2024 WL

5008765, at * 12 (D. Minn. Dec. 6, 2024) (finding defendant's explanation that it decided

to wait instead of seeking an extension of the deadline was a "tactical decision" that did

"not constitute good cause to amend the scheduling order"); *Fair Isaac Corp. v. Experian

Info. Sols., Inc.*, No. 06-cv-4112 (ADM/JSM), 2009 WL 10677528, at * 13- 14 (D. Minn.

July 10, 2009) (explaining that party failing to produce discovery "had clearly broken its

end of the bargain," but the party seeking the discovery "failed to do anything about it until

two weeks after the non-dispositive motion deadline" and "[t]his lack of action. . . does not

amount to the diligence required to establish good cause").

   "The standard for a motion to amend a scheduling order is not being aware that

one could be diligent, but believing inaction is justified; the standard is actually being

diligent." *Zarling,* 2022 WL 1598232, at * 5 (citing *Reichel Foods, Inc. v. Proseal Am.,

Inc.*, No. 19-cv-2604 (ECT/KMM), 2021 WL 3674495, at *3 (D. Minn. Aug. 19, 2021)).

Thus, it was "incumbent on [the Department] to take steps to protect [its] interests and

comply with the mandates of the pretrial scheduling order by at least seeking a motion to

---

[3] Because the Court finds the motion is not supported by good cause, it will not address
"extraordinary circumstances" under Local Rule 16.3(d).

extend the deadline." *Johnson v. Franchoice, Inc.*, No. 19-cv-1417 (MJD/ECW), 2020 WL 6938782, at * 10 (D. Minn. Nov. 25, 2020); *see also REA Invs., LLC v. Novel Energy Sols., LLC*, No. 23-cv-01159 (PJS/JFD), 2025 WL 1640710, at * 3 (D. Minn. May 1, 2025) (finding motion lacked good cause where party "had adequate notice of the issues on which it now wants additional discovery and of the existence of the information it now seeks, and it had that notice before fact discovery closed.").

Consequently, the Court denies the Department's motion in so far as it seeks to reopen discovery. However, it will grant the motion to modify the expert discovery and dispositive motion deadlines as they are affected by the Court's decision on the Motion to Compel, fully addressed below.

## II.    Motion to Compel[4]

The Department also moves for an Order from the Court pursuant to Federal Rule of Civil Procedure 37(a)(3)(B) compelling Cigna and ERIC to respond to specific discovery requests.

Federal Rule of Civil Procedure 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Rule 26(b) of the Federal Rules of Civil Procedure is widely recognized as a discovery rule which is liberal in scope and interpretation, extending to those matters which are relevant and reasonably calculated

---

[4] The Department timely filed its motion to compel before the non-dispositive motion deadline on December 30, 2025. (Dkt. 22 at 3.)

to lead to the discovery of admissible evidence." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). Although discoverability is broader than admissibility, this standard "should not be misapplied so as to allow fishing expeditions in discovery. Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Id.* Then the party resisting production "bears the burden of establishing lack of relevancy or undue burden." *Inline Packaging, LLC v. Graphing Packaging Int'l, Inc.*, Case no. 15-cv-3183 (ADM/LIB), 2016 WL 6997113, at *7 (D. Minn. Sep. 6, 2016) (quoting *Saint Paul Reinsurance Co. v. Com. Fin. Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa Nov. 22, 2000)).

Courts have broad discretion in handling pretrial procedure and discovery. *See*, *e.g.*, *Rowles v. Curators of Univ. of Mo.*, 983 F.3d 345, 353 (8th Cir. 2020) ("A district court has very wide discretion in handling pretrial discovery . . . ." (quotation omitted)); *Solutran, Inc. v. U.S. Bancorp*, No. 13-cv-2637 (SRN/BRT), 2016 WL 7377099, at *2 (D. Minn. Dec. 20, 2016) ("Further, magistrate judges are afforded wide discretion in handling discovery matters and are free to use and control pretrial procedure in furtherance of the orderly administration of justice.") (cleaned up). "Routine, '[b]oilerplate objections, without more specific explanations for any refusal to provide information, are not consistent with the Federal Rules of Civil Procedure.'" *Patterson Dental Supply, Inc. v. Pace*, No. 19-cv-1940 (JNE/LIB), 2020 WL 10223625, at * 21 (D. Minn. June 17, 2020) (quoting *In re: RFC & ResCap Liquidating Trust Litig.*, No. 13-cv-3451 (SRN/JJK/HB), 2015 WL 12778780, at *6 (D. Minn. June 8, 2015)).

### A. Cigna

The Department contends that its discovery requests seek relevant information, that Cigna's responses are deficient, and that Cigna does not substantiate its objections. (Dkt. 52 at 10.) Each disputed request is addressed individually below.

#### 1. Interrogatory 2

The Department's Interrogatory 2 states:

> For each of your or your members' benefit plan that you believe Minn. Stat.§ 62W.07 has changed a benefit, identify the plan and the way in which the benefit plan changed due to Minn. Stat § 62W.07.

(Dkt. 55-3 at 8.) In its supplemental response, Cigna provided the Department with two fully-insured non-ERISA plans covered by Minn. Stat. 62W.07 as examples of plans that have changed benefits as a result of the statute. (Dkt. 55-3 at 9.) Cigna also provided the Cigna employee benefit plan as an example of a self-insured ERISA plan which the statute *would* impact. (*Id.*) The Department contends that Cigna's response does not purport to be comprehensive, and that the examples fall short of answering the interrogatory. (Dkt. 52 at 11-12.) Cigna argues that it has fully answered the interrogatory, that none of its ERISA plan benefit designs have been altered yet due to the statute, and that searching for "all" plans is not proportional to the needs of the case and is overly broad and unduly burdensome. (Dkt. 63 at 15-17.)

The Court finds Cigna's arguments unpersuasive. First, Cigna has not fully answered the interrogatory. The interrogatory does not request examples of plans, and that is all that Cigna has provided. Moreover, Cigna's supplemental response states that Cigna's ERISA employee benefit plan, and others similar plans, "are impacted by" the statute but

at the hearing and in briefing Cigna explained that no changes have been made to its ERISA employee benefit plans. (*See* Dkt. 55-3 at 9; Dkt. 63 at 16-17.) This contradiction highlights the fact that the Department cannot determine what plans have or have not been impacted by the statute, which is relevant to standing and whether the statute improperly regulates ERISA plan sponsors and not just PBMs. Second, Cigna's boilerplate objection that the interrogatory is not proportional because it requests "all" plans is contradicted by the language of the interrogatory itself, which does not include "all" or ask for all plans generally. Rather, the interrogatory requests "each your or your members' benefit plan" that you believe Minn. Stat.§ 62W.07 has changed a benefit.  (Dkt. 55-3 at 8.) Moreover, Cigna does not explain how searching for anything more would be unduly burdensome or disproportional to the needs of the case. *See Patterson Dental Supply, Inc.,* 2020 WL 10223625, at * 21; *Farmers Ins. Exchange v. West*, No. 11-cv-2297 (PAM/JJK), 2012 WL 12864845, at *10 (D. Minn. Sept. 21, 2012) ("Conclusory objections asserting the boilerplate response that a request is overly broad and burdensome are not valid objections").

Therefore, the Department's motion is granted to the extent it seeks an Order instructing Cigna to more fully answer Interrogatory No. 2. The Court orders Cigna to provide the Department with a supplemental response that fully and completely answers the interrogatory, including specifically identifying its plans that have been impacted by the statute and how those plans have been impacted. If no plans have changed a benefit due to the statute, Cigna should clearly explain as much.

### 2. Interrogatory 3

The Department's Interrogatory 3 states:

Identify, to the best of your knowledge, any PBMs operating in Minnesota that have taken specific steps to comply with the anti-steering provision and any that have not, including how such steps towards compliance or lack of compliance have impacted profits or losses for said PBMs.

(Dkt. 55-3 at 9.)

Cigna argues the interrogatory "is written like an investigatory tool for the State to assess PBM compliance and not like a proper request targeted to claims addressing plan sponsor's statutory and constitutional rights" (Dkt. 63 at 17-18), and that it provided the information it has on the financial impacts of Minn. Stat. § 62W.07 when it produced the export report of Sean M. May, Ph.D., which describes the financial impacts if plans must comply with Section 62W.07. (Dkt. 63 at 18.) Cigna also argues that (1) the interrogatory asks for only PBM financial impacts not plan sponsors, (2) alludes that Plaintiffs may demonstrate standing from different types of harm, not just financial impacts, and (3) it should not be required to identify profit and loss impacts to PBMs because that information is not relevant and responding would be unduly burdensome. (*Id.* at 19.) The Department argued at the hearing that profits and loss information is central to its understanding of the statute's regulation of PBMs and any potential impact on plan sponsors.

The Court agrees with the Department. First, the Court finds it hard to believe that the expert report Cigna provided is the sole document demonstrating the financial impact of Minn. Stat. § 62W.07 would have on Cigna plans in its possession. And even if it is,

Cigna's supplemental response did not allege that it looked for and did not find any responsive information to identify. (*See* Dkt. 55-3 at 10-13.) Second, the financial impact of the statute on PBMs is relevant to how the statute is regulating PBMs and if that regulation also affects plan sponsors. In fact, Cigna, in addition to being a plan sponsor, also operates as a PBM. (Dkt. 1 ¶ 28.) Thus, at the least, Cigna should have access to the profit and loss impact of the statute on itself as a PBM. Third, Cigna does not explain how responding to this interrogatory would be unduly burdensome, and a boilerplate objection is not a sufficient basis to avoid answering. *Patterson Dental Supply, Inc.,* 2020 WL 10223625, at * 21.

Therefore, the Department's motion is granted to the extent it seeks an Order instructing Cigna to more fully answer Interrogatory No. 3. The Court orders Cigna to provide the Department with a supplemental response that fully and completely answers the interrogatory, including identifying PBMs that it knows took steps to comply with the anti-steering provision of the statute, those that have not, and how compliance or lack of compliance has impacted the profits or losses of those PBMs. Cigna must respond with the steps it has taken in its capacity as a PBM to comply with the statute and the financial impacts the statute has had on Cigna as a PBM.

### 3. Interrogatories 10, 11, and 12

In Interrogatories 10, 11, and 12 the Department asked Cigna to "identify all requirements or restrictions" for participating in preferred pharmacy networks, mail-order pharmacy networks, and specialty pharmacy networks as described in the Complaint. (Dkt. 55-3 at 19-24.)

Cigna argues the interrogatories seek irrelevant information because in its view the requirements of pharmacy participation has no bearing on whether the statute impermissibly regulates ERISA plan benefit design or whether the statute is enforced extraterritorially, but that it nevertheless provided answers tailored to what it believes are the issues in the case. (Dkt. 63 at 22.) The Department counters that the impact of the statute on pharmacy network participation is a core allegation in the Complaint and the Department is entitled to learn about the impact of the statute on the pharmacy networks. (Dkt. 52 at 13-14.) The Department further argues that Cigna's supplemental responses identify requirements for plan beneficiaries to receive reimbursement from pharmacies, but not the "requirement or restrictions for participation in the pharmacy networks in question by the pharmacies" as the interrogatory asked. (*Id.*)

The Court agrees that the Department is seeking relevant information and Cigna has not responded to the interrogatory. *See Sanny v. Trek Bicycle Corp.*, No. 11-CV-2936 (ADM/SER), 2012 WL 12981662, at * 4 (D. Minn. Sept. 20, 2012) ("Relevancy is evaluated liberally, in a manner that advances the discovery of useful evidence and that promotes the efficiency of litigation."). The Department is trying to obtain the factual basis behind the allegations that plan sponsors are impacted by the statute's regulation of pharmacy networks through PBMs made by Plaintiffs in the Complaint. (Dkt. 1 ¶¶ 55-57 (preferred pharmacy network); *id.* ¶¶ 58-64 (mail-order pharmacy network); *id.* ¶¶ 65-70 (specialty pharmacy network).) And the Court agrees that Cigna's response is confusing and inadequate.

14

Therefore, the Department's motion is granted to the extent it seeks an Order instructing Cigna to more fully answer Interrogatories 10, 11, and 12. The Court orders Cigna to provide the Department with a supplemental response that fully and completely answers the interrogatory, identifying the requirements or restrictions for participating in each of the identified pharmacy networks offered by Cigna.[5]

### 4. Interrogatory 15

The Department's Interrogatory 15 states:

Identify every person with knowledge of the facts alleged in the Complaint or in any way relating to this matter.

(Dkt. 55-3 at 28.)

The Department argues Cigna's response is deficient because it identifies only one person instead of "every person" with knowledge of the facts alleged in the Complaint and, as the Vice President and General Manager of Cigna's Healthcare's entire pharmacy business, it appears unlikely the person identified would have any information specific to Cigna's operations in Minnesota. (Dkt. 52 at 14-15.) The Department explained at the hearing that it wants this information so that it can subpoena the people identified. Cigna

---

[5] Cigna alleges in a footnote that responding to this interrogatory would require information contained within contracts to which Cigna is not a party and therefore objects on custody, possession or control grounds. (Dkt. 63 at 24 n. 4.) However, Cigna did not provide this objection in its original or supplemental responses and only raises it for the first time in briefing on this motion. (Dkt. 55-3 at 19-26.) Moreover, it appears that Cigna has not even attempted to search for this information because it alleges only that the information is "likely" not in its custody, possession, or control. (Dkt. 63 at 24 n. 4.) Thus, the Court does not address this argument. *See Util. Constr. Co., Inc. v. United States*, No. 22-860C, 2024 WL 3405995, at * 6 (Fed. Cl. July 12, 2024) ("As courts across the Nation have reiterated, objections to a discovery request raised for first time in response to a motion to compel are late and waived.") (collecting cases).

objected to the interrogatory on grounds it is overly broad, burdensome, and seeks irrelevant information. (Dkt. 63 at 25.) Cigna explained that even though the Department has tailored the request to decision making operations in Minnesota, the request is still overly broad because it would encompass many individuals having nothing to do with the facts alleged in the Complaint. Cigna also argues that the person they identified has knowledge of the facts alleged in the Complaint and the benefits offered in the Cigna plan. (*Id.*) Lastly, Cigna argues that the Department's objective to obtain this information to conduct additional discovery is not a reason to compel them to respond when discovery has already closed.

The Court agrees that the request is overly broad because it seeks "every person" within an organization as large as Cigna with knowledge in any way relating to the matter. And with the Court's decision to deny the Department's motion to reopen discovery, requiring Cigna to respond to this overbroad interrogatory, even as narrowed, would be disproportionate. Cigna already provided the name of the Vice President and General Manager of Cigna Healthcare's integrated pharmacy business and represents the person identified has knowledge. (Dkt. 54-10 at 20.) Therefore, the Court denies the Department's motion as to this interrogatory.

### 5. Requests for Production 3 and 4

The Department's Requests for Production 3 and 4 state:

From August 1, 2019, to the present, all documents relating to how the local access protection financially impacts plan beneficiaries.
From August 1, 2019, to the present, all documents relating to how the anti-steering provision financially impacts plan beneficiaries.

16

(Dkt. 54-22 at 8-10.)

Cigna argues that it conducted a search for responsive documents sufficient to show the cost impact of the statute on Cigna's plans, and "did not locate and is not aware of any pre-existing analyses regarding the requested granular cost impacts." (Dkt. 63 at 20; Dkt. 54-22 at 8-10.) The Department counters that the documents Cigna produced and identified in its supplemental response are not responsive because they do not show financial impacts, and that it would "expect" Cigna would have financial analysis documents as a fiduciary for the plan beneficiaries. (Dkt. 52. at 16.) Despite the Department's argument, the Court must accept Cigna's representation that it cannot respond to the requests because it has no such documents. *See Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 637 (D. Minn. 2000) ("[W]e must accept American's representation, that it is currently unable to respond to the Plaintiffs' discovery requests because it has no such documents. If, upon further inquiry, American's representation is untrue, and unjustified, then the full panoply of sanctions, under Rule 37, are available to us in rectifying such egregious misconduct."). Therefore, the Court denies the Department's motion as to these Requests for Production of Documents.

### 6. Requests for Production 6, and 8

The Department's Requests for Production 6 and 8 state:

From August 1, 2019, to the present, all documents relating to PBMs making recommendations to ERISA plan sponsors on the design of their benefit plans as described in paragraph 49 of the complaint.

From August 1, 2019, to the present, all documents relating to any recommendations or advice PBMs have given to you or any of your member organizations acting as ERISA plan sponsors, as described in paragraphs 52 and 53 of the complaint.

(Dkt. 54-22 at 11, 13.)

Cigna argues the requests are irrelevant and burdensome. (Dkt. 63 at 28-31.) The Department argues that the information sought is relevant to the factual information underlying specific paragraphs in the Complaint, and that Cigna's arguments otherwise are disingenuous. (Dkt. 52 at 16-17.) In correspondence, the Department agreed to narrow the scope of the requests to plans for which Cigna is a sponsor and not the plans where Cigna is serving as a PBM. (Dkt. 52 at 16-17; Dkt. 54 ¶ 15.) Despite this narrowing, the Department maintains Cigna has not produced documents responsive to the request. At the hearing Cigna explained that it believes it sufficiently responded to the requests related to Cigna's role as a sponsor when it provided a benefit grid and a single email showing what a plan sponsor looks at when they approve a benefit design. (Dkt. 63 at 29-30.)

The Court agrees with the Department that the interrogatory seeks relevant information related to the claim in the Complaint that PBMs make recommendations to plan sponsors as to pharmacy networks and therefore the plan sponsors are unlawfully impacted by the statute in violation of ERISA. (Dkt. 1 ¶¶ 49, 52-53.) Cigna's relevance argument about *how* a plan sponsor makes a decision misses what this interrogatory asks for, which is all documents relating to the advice and recommendations PBMs make to plan sponsors as alleged in the Complaint. Moreover, Cigna's boilerplate objections that the requests are overly broad, unduly burdensome, and not proportionate because it would, for example, have to search emails, is unpersuasive when searches of emails are a routine part of discovery. *See Farmers Ins. Exchange,* 2012 WL 12864845, at *10; *Patterson*

*Dental Supply, Inc.,* 2020 WL 10223625, at * 21; and *Bores v. Domino's Pizza, LLC*, No. 05-cv-2498 (RHK/JSM), 2007 WL 9735903, at * 14 (D. Minn. Jan. 25, 2007) ("The fact that production of documents would be burdensome and expensive and would hamper the party's business operations is not a reason for refusing to order production of relevant documents.") (quoting *Wagner v. Dryvit Systems, Inc.*, 208 F.R.D. 606, 610 (D. Neb. 2001)).

Therefore, the Department's motion is granted to the extent it seeks an Order instructing Cigna to supplements its responses to Requests for Production 6 and 8. The Court orders Cigna to search for and produce all documents responsive to these requests.

### 7.  Request for Production 7

The Department's Request for Production 7 states:

> From August 1, 2019, to the present, all documents relating to ERISA plan sponsors making determinations of what drugs the plan covers, how much the plan will pay for those drugs, and at which pharmacies beneficiaries can have prescriptions filled, as described in paragraph 50 of the complaint.

(Dkt. 54-22 at 12.)

The Department argues that Cigna's production is insufficient because none of the documents provided are about the benefit selection decision making process, and they only identify what drugs are covered, how much the plan pays for the drugs, and where prescriptions may be filled. (Dkt. 52 at 17.) The Department argues that the plan sponsors' decision making process is the central issue of this case and submits that the Complaint's allegations all focus on how the Minnesota Statute regulating PBMs impacts plan decisions in violation of ERISA. (*Id.*) Cigna contends it produced documents sufficient to show (1)

the current terms of prescription drug benefits (2) the approval of the pharmacy benefits, and (3) and a benefit-selection chart showing its benefit-design selection. (Dkt. 63 at 31-32.) Cigna submits that any additional search would be cumulative, unnecessarily broad, unduly burdensome, not proportional, and would unearth irrelevant information. (*Id.* at 32.)

The Court finds Cigna's arguments unpersuasive. First, Cigna admits that it has not produced documents that show "ERISA plan sponsors making determinations." (*Id.* at 31-32.) Rather it provided documents showing what the plans cover, a response that circumvents what the request actually seeks. (*Id.*) Second, Cigna's boilerplate objections are not supported by an explanation as to how the request is "cumulative, unnecessarily broad, unduly burdensome, and not proportional. (Dkt. 63 at 32); *Patterson Dental Supply, Inc.,* 2020 WL 10223625, at * 21. Moreover, the only explanation Cigna provides is that, in its view, how plan sponsors make benefit design decisions does not bear on an ERISA preemption analysis. (Dkt. 63 at 32.) But the request does not ask for documents showing *how* plan sponsors make decisions it asks for documents relating to "determinations" made by ERISA plan sponsors as to what drugs the plan covers, how much the plan will pay for those drugs, and at which pharmacies beneficiaries can have prescriptions filled. Regardless, the Court does not accept Cigna's narrowed view of relevance, especially when *how* determinations are made bears on a central issue in this case which is whether benefit design choices were changed due to the statute. *Sanny*, 2012 WL 12981662, at * 4 ("Relevancy is evaluated liberally, in a manner that advances the discovery of useful evidence and that promotes the efficiency of litigation.")

For these reasons, the Department's motion is granted to the extent it seeks an Order instructing Cigna to supplements its responses to Request for Production 7. The Court orders Cigna to search for and produce all documents responsive to this request.

### 8.  Request for Production 9

The Department's Request for Production 9 states:

> For you or each of your members that sponsor ERISA plans, from August 1, 2019, to the present, all documents identifying which drugs the plans cover, how much the plans will pay for those drugs, and at which pharmacies beneficiaries can have prescriptions filled.

(Dkt. 54-22 at 13.) The Department alleges the "formulary information" Cigna provided is insufficient because it does not show how much plans will pay for the specific drugs on the formulary, which prevents any analysis of pricing impacts or relative costs of certain plan decisions that might be made by plan sponsors or PBMs. (Dkt. 52 at 18.) And the Department alleges the formulary itself includes only the most commonly prescribed drugs which is not comprehensive. (*Id.*) At the hearing the Department explained the financial impact of the statute on PBMs and plan sponsors is key and affects whether the statute is interfering with plan design as alleged, and whether the Plaintiffs have standing. The Department submits that the information sought by this request will aid in that financial impact analysis. Cigna argues the documents it produced are responsive to the request, and that drugs not on the formulary as well as how much plans pay for drugs on the formulary are not relevant. (Dkt. 63 at 33-35.) Cigna also argues that if the information is relevant to standing, Plaintiffs get to choose how they establish standing. (*Id.* at 34-35.)

The Court agrees with the Department. First, the request seeks relevant information regarding the financial impact of the statute as alleged in the Complaint. (*See* Dkt. 1 at ¶ 93.) Second, Cigna admits that it has not provided documents regarding how much plans will pay for drugs in the formulary, rather it produced documents showing "out-of-pocket enrollee costs." (Dkt. 63 at 34.) Third, though Cigna may be correct that it may choose to establish standing how it wants, it cannot hamstring the Department from gathering facts to defend against Cigna's standing arguments.

Therefore, the Department's motion is granted to the extent it seeks an Order instructing Cigna to supplements its responses to Request for Production 9. The Court orders Cigna to search for and produce all documents responsive to this request.

### 9. Requests for Production 10

The Department's Request for Production 10 states:

> For you or each of your members that sponsor ERISA plans, from August 1, 2016, to the present, all documents relating to where beneficiaries' prescriptions are being filled, including whether beneficiaries' prescriptions were filled at out-of-network, in-network, or preferred-in-network pharmacies.

(Dkt. 54-22 at 14-15.) The Department argues that where beneficiaries are filling prescriptions is relevant because the statute deters PBMs from steering customers to affiliated pharmacies over other pharmacies, and the Plaintiffs allege this hinders plan administration and thereby is preempted by ERISA. (Dkt. 52 at 18-19.) The Department also argues that having this information from the time before and after the statute is enacted is important for parsing out the statute's impact and the injury on Plaintiffs or lack thereof. (*Id.*) Cigna argues that the documents it produced showing the in-network pharmacies in

22

Minnesota that enrollees in the Cigna employee plan can access and the terms of the retail, mail-order, and specialty pharmacies are sufficient to satisfy this request. (Dkt. 63 at 36.) Cigna argues that where enrollees actually fill their prescriptions is not relevant because enrollees plan benefit design and terms dictate which pharmacies they can utilize on an in-network or out-of-network basis. (*Id.*)

The Court finds the request seeks relevant information but that it is not proportional. The Department seeks "all documents" relating to what pharmacy network potentially thousands of plan beneficiaries have filled prescriptions over a nine-year period. (Dkt. 54-22 at 15.) The burden of producing this information far outweighs the benefit to be gained from the information, especially considering the Court's denial of modifying several of the scheduling order dates. Moreover, Cigna has filed suit so that it will not be forced to comply with the statute. In other words, as Cigna explained at the hearing, it has not yet taken steps to comply with the statute in their ERISA plans, rendering this request moot. Therefore, the Court denies the Department's motion as to this request.

### 10. Request for Production 11

The Department's Request for Production 11 states:

> From August 1, 2019, to the present, all documents relating to any fiduciary duty, or lack thereof, owed to ERISA plan sponsors by PBMs that they hire.

(Dkt. 54-22 at 15.) The Department argues "[t]he Supreme Court has not held that all regulations of PBMs are de facto regulations of plan sponsors" and that the "Department intends to litigate whether PBM regulations are subject to ERISA preemption, based in part on the fact that PBMs owe no fiduciary duty to plan sponsors and therefore do not stand in

their shoes when it comes to preemption of state regulations." (Dkt. 52 at 19-20.) The Department also argued at the hearing that its theory that not all regulations of PBMs operate as regulations of plans has not been foreclosed by *Care Mgmt. Ass'n v. Wehbi*, 18 F.4th 956, 966 (8th Cir. 2021). Cigna argues that fiduciary duties are not relevant because its claims in the Complaint do not involve fiduciary duties, fiduciary duties do not impact how the statute restricts pharmacy network design which it asserts is preempted by ERISA, and the Department's theory of the case is "factually incorrect" and has been rejected by the Eighth Circuit in *Webhi*. (Dkt. 63 at 37-39.)

The Court agrees with the Department. First, the request seeks relevant information tied to a defense the Department intends to bring. Second, Cigna's legal argument that the Department's theory has been foreclosed misunderstands that parties are allowed to pursue discovery to obtain facts relevant to a claim or defense, even if that theory is an "argument for extending, modifying, or reversing existing law." Fed. R. Civ. P. 11 (b)(2). Second, the Court already considered the parties' arguments on whether discovery should happen at all and ordered discovery to occur despite the same legal argument regarding whether the Department's theory is foreclosed by the Eighth Circuit in *Wehbi*. (*See* Dkt. 19 at 3; Dkt. 20 at 3.) Third, the Department is not required to accept Cigna's conclusory allegation that its theory is "factually incorrect."  Rather this point supports the Department's argument that there are fact disputes which needed to be developed through discovery. (*See* Dkt. 19 at 2-3.)

Therefore, the Department's motion is granted to the extent it seeks an Order instructing Cigna to supplement its responses to Request for Production 11. The Court orders Cigna to search for and produce all documents responsive to this request.

### 11. Request for Production 12

The Department's Request for Production 12 states:

> From August 1, 2019, to the present, all documents relating to PBMs reimbursement rates, pay structures, or any other financial arrangements between any plan sponsors, PBMs, pharmacies, drug manufacturers, or drug wholesalers.

(Dkt. 54-22 at 16.) The Department argues that the financial arrangements are highly relevant to whether the statute, in practice, functions as a regulation of plan sponsors, or merely a regulation of PBMs, or alternatively is merely a regulation of costs which it argues is expressly permitted by *Rutledge v. Pharm. Care Mgmt. Ass'n,* 592 U.S. 80, 91-92. (Dkt. 52 at 20.) The Department explained at the hearing that it agreed to limit the request to entities in Minnesota. Cigna argues that PBM compensation is not relevant to whether the statute is preempted or applies extraterritorially, and that the request seeks commercially sensitive information. (Dkt. 63 at 39-40.) At the hearing Cigna also maintained its objection that the request is overbroad and not proportional. (*See* Dkt. 54-22 at 16.) The Court agrees with Cigna that the request is overbroad as it seeks "all documents" between several entities, not limited to just PBMs or plan sponsors. Nor is it proportional given the other requests the Department has tailored towards financial information and the burden of producing documents responsive to this broad request. Therefore, the Court denies the Department's motion as to this request.

### B.  ERIC

#### 1.  Interrogatory 1

The Department's Interrogatory 1 states:

Identify each plaintiff's organizational structure, including membership and governance structure, if applicable.

(Dkt. 54-6 at 1.) The Department argues that ERIC should be required to disclose its memberships so that it can seek discovery from the relevant entities. (Dkt. 52 at 22.) ERIC counters that discovery has closed and if the motion to modify the scheduling order to reopen discovery is denied the motion to compel is moot as it relates to this interrogatory. (Dkt. 60 at 14-15.)[6]

The Court agrees with ERIC. For the reasons discussed above, the Court declined to modify the scheduling order to reopen discovery, thus the Department cannot conduct the third-party discovery it argued it intended to seek on ERICs members. Therefore, the Court denies the Department's motion as to this interrogatory.

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED**, that:

1. The Department's Motion to Compel is **GRANTED in part and DENIED in part**, as set forth above.

---

[6] Because Dkt. 60 does not contain CM/ECF pagination the Court cites to the page numbers provided at the bottom of the page.

2. Cigna shall respond to the Motion Compel as directed as soon as practicable and in any event by no later than 30 days from the date of this Order.

3. The Department's Motion to Modify the Scheduling Order is **GRANTED in part and DENIED in part** as follows to take into consideration the time needed to comply with the Motion to Compel:

   a. Expert discovery, including depositions, shall be completed on or before April 2, 2026.

   b. All dispositive motions must be served and filed on or before May 29, 2026.

   c. All other deadlines in the Pretrial Scheduling Order remain in effect.

Dated:  January 16, 2026

_s/Shannon G. Elkins_____
SHANNON G. ELKINS
United States Magistrate Judge

27