UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| The ERISA Industry Committee, National Labor Alliance of Health Care Coalitions, The Cigna Group, and Cigna Health and Life Insurance Company, | Case No. 24-CV-04639 (KMM-SGE) |
| Plaintiffs, | |
| vs. | **DEFENDANTS' REPLY MEMORANDUM SUPPORTING SUMMARY JUDGMENT** |
| Minnesota Department of Commerce and Grace Arnold, in her official capacity as Commissioner, | |
| Defendants. | |

The Court should grant the Department's summary judgment motion. ERISA does not preempt Minnesota's regulations that prohibit pharmacy benefit managers (PBMs) from steering enrollees to PBM-affiliated pharmacies because those regulations do not regulate benefit plan sponsors. And even if there were some incidental impacts to sponsors, Eighth Circuit precedent confirms that they are still not preempted. *Pharmaceutical Care Management Association v. Wehbi* 18 F.4th 956 (8th Cir. 2021). Finally, even if the regulations would otherwise be preempted, they are saved by ERISA's saving clause.

**ARGUMENT**

To avoid summary judgment, the non-moving party must do more than show that there is "some metaphysical doubt" as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). This requires presenting examples or

1

evidence demonstrating a genuine issue for trial, not mere contentions. *Kelleher v. Wal-Mart Stores, Inc.*, 817 F.3d 624, 634–35 (8th Cir. 2016). No such evidence in the record contradicts the evidence presented by the Department.

The plaintiffs attempt to avoid summary judgment by casting plan sponsors as meaningful decision-makers in composing their networks. That attempt fails because, in face of the Department's concrete evidence that sponsors do not design pharmacy networks, the plaintiffs offer only unsupported conjecture. That lack of evidence does not create fact questions. Instead, the uncontroverted facts establish as a matter of law that the non-PBM plaintiffs lack standing because Minnesota's anti-steering provisions do not injure them. The plaintiffs' ERISA preemption claims also fail on the merits because Minnesota's anti-steering provisions are exactly the sort of regulations upheld in *Wehbi*, or alternatively because they are saved by ERISA's saving clause.[1]

## I.   UNSUBSTANTIATED CONJECTURE DOES NOT CREATE A FACT QUESTION ON PBM-SPONSOR INTERACTIONS.

The plaintiffs generally attempt to create a fact issue regarding plan sponsors' participation in designing PBMs' networks to suggest that plan sponsors are the final decision-makers when it comes to PBM pharmacy networks. (*See* Doc. 116, at 3-6, 8-9, 13, 18-24.) The undisputed evidence establishes that PBMs, not plan sponsors, determine pharmacy-network participants. The plaintiffs' conclusory assertions of theoretical alternatives do not create a fact issue.

---

[1] The plaintiffs agree their extraterritoriality claim should be dismissed. (Doc. 116, at 29.)

The Department established that PBMs, not sponsors, control of pharmacy networks. PBMs ███████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████.

(Doc. 87, at 5-8.) The plaintiffs first argue that the Department "overreads" documents without the context of other "discussions or negotiations" that preceded those documents. (Doc. 115, at 3-4.) The plaintiffs, however, chose not to submit evidence about those discussions or negotiations. Instead, the only evidence are the documents submitted by the Department. And the Department's argument draws directly from those documents: PBMs

████████████████████████████████████████████████

██████████████████ (Doc. 96-1, at 2.) No sponsor requested modifications to a standard network. (Doc. 91, ¶ 15.) And PBMs ███████████████████████████

████. (Doc. 93-6, at 60.) Far from citing "singular documents," the fact that network composition is the product of PBM, not plan sponsor, decision-making pervades the documents produced by the plaintiffs and presented by the Department.

The plaintiffs also point to conclusory statements about the role that plan sponsors could theoretically play in determining pharmacy benefits. (Doc. 116, at 4-5.) The plaintiffs rely on statements by Cigna's general manager of integrated-pharmacy organization and their expert witness. First, Cigna's manager claims that self-funded sponsors are the final decision-makers regarding pharmacy benefits. (Doc. 103-2, ¶ 6.) This claim is overly general; even if plan sponsors are final decision-makers on "pharmacy benefits" generally, Cigna could provide no evidence that plan sponsors have any decision-making role—let

3

alone serve as a final decision-maker—regarding which pharmacies are in PBMs' networks. Second, the plaintiffs' expert claims in similar conclusory fashion that sponsors "*may* mix-and-match pharmacy networks" or "*may* ask a PBM to develop a plan-specific network." (Doc. 116, at 5 (emphasis added).) These hypotheticals, however, lack any supporting evidence that plan sponsors actually do make such decisions in practice. Nor do the sources cited by the plaintiffs' expert provide any further evidence of actual decision making on these topics by plan sponsors. (*See* Doc. 91-6, at 8 nn.17-18, at 11 n.31.) For example, one of the cited sources is the plaintiffs' own interrogatory responses. (*Id.* at 8 nn.18.)

Hypothetical possibilities about what sponsors might do are not sufficient to preclude summary judgment in the face of actual evidence about how plan sponsor-PBM interactions work. The plaintiffs produced no evidence substantiating that their hypotheticals are realities. The plaintiffs' reliance on their own lack of evidence inverts the summary judgment standard, which required the plaintiffs to come forward with evidence establishing a fact dispute. The uncontroverted evidence shows that PBMs—not plan sponsors—are the ones who make network design decisions.

## II.   THE NON-PBM PLAINTIFFS LACK STANDING.

The Department's principal memorandum explains that the non-PBM plaintiffs lack standing because they are not injured by the anti-steering provisions. (Doc. 86, at 13-16.) The plaintiffs' contrary arguments are not persuasive.

The non-PBM plaintiffs claim that binding precedent grants them standing. (Doc. 6-8.) But neither binding case they cite addressed standing. *See generally Pharm. Care Mgmt.*

*Ass'n v. Wehbi*, 18 F.4th 956 (8th Cir. 2021); *Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr., Inc.*, 413 F.3d 897 (8th Cir. 2005). And the out-of-circuit cases the plaintiffs rely on are distinguishable. For example, in *Liberty Mutual*, the plan sponsor was definitively subject to liability based on the state's regulation of its third-party administrator, unlike the speculative injuries here. *Liberty Mut. Ins. Co. v. Donegan*, 746 F.3d 497, 502 (2d Cir. 2014). In *McKee*, the plan sponsor was actually making decisions about its pharmacy network; for example, it had created its own pharmacy to include in that network. *McKee Foods Corp. v. BFP Inc.*, 173 F.4th 242, 258 (6th Cir. 2026). Such evidence does not exist here.

The remainder of the non-PBM plaintiffs' standing arguments are variations on the theme that ERISA supposedly gives them a right to determine the pharmacies in their pharmacy networks. (Doc. 116, at 8-10.) That might be true if plan sponsors managed their own networks. But the undisputed facts show that plan sponsors generally (and certainly the plan sponsors at issue here) join networks predesigned by PBMs. Accordingly, on these facts, the anti-steering provisions are not operating as a regulation of ERISA plans and are not preempted.

Finally, the Department also explained why NLA lacks standing due to a lack of redressable injury: the member on whom it bases its standing uses a PBM (Caremark) that independently agreed not to engage in enrollee steering. (Doc. 86, at 16.) NLA argues a decision in this case could somehow invalidate that agreement or that other members might use a different PBM. (Doc. 116, at 11-12.) As to its other members, NLA did not identify them (or their PBMs) as a basis for standing in this case. (Doc. 91-3, at 13-14.) And as to

5

Caremark, it is not a party to this case and also waived its rights to challenge that agreement. (Doc. 89-3, at 1-2.) Nor did NLA's complaint ask this Court to invalidate the agreement. (Doc. 1, at 30.) Consequently, an order in this case would not affect Caremark's obligation to comply with it, and NLA has no redressable injury giving it standing.

### III.   THE ANTI-STEERING PROVISIONS ARE NOT PREEMPTED BY ERISA.

ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). State laws "relate to" an ERISA plan if they have a "connection with" or "reference to" a plan. *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656 (1995). The parties agree that only the "connection with" preemption is relevant. (Doc. 99 at 4.) The Court should grant the Department summary judgment because the regulations at issue are directed at PBMs, not plans, the regulations are consistent with prior regulations upheld as not having a "connection with" ERISA plans, or alternatively because the regulations are insurance regulations saved from preemption under ERISA's insurance saving clause.

#### A.   ERISA Preemption Does Not Preclude PBM Regulations.

The Supreme Court has recognized ERISA's "relate to" language is so expansive that if it were "taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course." *Travelers Ins. Co.*, 514 U.S. at 655-56. Accordingly, the Supreme Court has held that state laws that regulate only the relationship between plans' external providers have no more than an "indirect economic influence" on plan choices and are not "a regulation of an ERISA plan itself" subject to preemption. *Id.* at 659.

6

Applying this guidance, the Supreme Court upheld regulations of PBMs generally in *Rutledge v. Pharmaceutical Management Care Association*. 592 U.S. 80, 88 (2020). And the Eighth Circuit upheld regulation of their networks specifically in *Wehbi*. 18 F.4th at 968. (Doc. 86 at 24-25.) As explained in the Department's principal memorandum, while the regulations may increase costs for PBMs, that stems from the choices made by PBMs, and do not result in ERISA preemption. (Doc. 87, at 16-18.)

The plaintiffs argue that is "beyond debate" that PBM regulations are per se regulations of plan sponsors, citing *Wehbi*. (Doc 116 at 19). But this is not the sweeping legal holding that the plaintiffs purport it to be. Instead, *Wehbi's* record was underdeveloped and rested on theoretical PBM-sponsor interactions, which, as explained in Section I, are contradicted by the evidence here. That evidence compels a different conclusion. The plaintiff's conclusory statement that this was a legal holding and not dependent on the (lack of) facts in *Wehbi* is unsupported. The *Wehbi* court's conclusion was based on a factual record that is distinguishable, and the Court cannot ignore the factual record developed here.

### B.    Under *Wehbi* the Anti-Steering Provisions Are Not Preempted.

Even if the Court were to accept that some PBM regulations are regulations of plan sponsors, the anti-steering regulations are still not preempted. As noted above, the parties agree that only the "connection with" preemption is relevant here. A state law has an impermissible "connection with" ERISA plans "if and only if (1) it 'governs . . . a central matter of plan administration'; (2) it 'interferes with nationally uniform plan administration'; or (3) 'acute, albeit indirect, economic effects' of the law 'force an ERISA

7

plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers.'" *Wehbi*, 18 F.4th at 968 (quoting *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 323 (2016)).

In *Wehbi,* the Eight Circuit upheld regulations preventing PBMs from excluding pharmacies from their networks using heightened accreditation standards. 18 F.4th at 968. The court found no preemption even though PBMs (though again, not plan sponsors) might include certain drugs or pharmacies from their networks as a result of such regulation. *Id.* at 968. The plaintiffs argue that any regulation that impacts a PBM's network design decisions is preempted by ERISA. (Doc. 116 at 13-15.) This bright-line alleged rule has no support in *Wehbi*.

The plaintiffs' attempts to distinguish *Wehbi* are also unavailing because the regulations it upheld are similar to Minnesota's anti-steering provisions. The plain text of the regulations upheld in that case are like Minnesota's regulations. Both regulations require PBMs to include pharmacies in their networks that they would otherwise exclude. The plaintiffs' argument that the laws upheld in *Wehbi* did not force PBMs to include pharmacies in their networks is also inconsistent with a plain reading of those statutes, and both the *Wehbi* state defendants' and the *Wehbi* PBMs' understandings of those regulations. (Doc. 110 at 20.)

The Department also explained that the anti-steering provisions are "mere cost regulations" permitted by *Travelers* and *Rutledge.* (Doc. 86 at 23.) In trying to rebut this argument, the plaintiffs focus on the impacts to *PBMs*, not plan sponsors. (Doc. 116 at 20-22). Specifically, they argue that the anti-steering regulations do not regulate "prices, costs,

or reimbursement rates at all." (Doc. 116 at 21). This is incorrect as a matter of law. The primary purpose of the anti-steering regulation is to prevent cost incentives (i.e., discounts or increased costs) that favor PBM-affiliated pharmacies unless also offered at a non-PBM affiliated pharmacy. Minn. Stat. § 62W.07. PBMs need not provide these incentives at non-affiliated pharmacies. But if they make that choice, they also cannot provide them at PBM-affiliated pharmacies.

The refill regulations similarly do not mandate that PBMs provide any particular benefit. The regulation only requires that if PBMs choose to provide incentives or restrictions that they be applied to at least one non-affiliated pharmacy in addition to PBM affiliated pharmacies. PBMs can still determine costs, conditions, and prices for network participation and a non-affiliated pharmacy must agree to those terms. Minn. Stat. § 62W.07(c) and (e). The only impact on plan sponsors is potentially increased costs if the PBMs choose to pass them along to the plan sponsors. As explained in the Department's principal memorandum, such regulations necessarily have only a de minimis economic burden because PBMs need only include *one* non-affiliated pharmacy. (Doc. 86, at 23-24.) They are accordingly not preempted.

### C.  ERISA's Saving Clause Saves the Anti-Steering Provisions If They Would Otherwise Be Preempted.

ERISA is not designed to supplant state insurance regulations and therefore contains an express saving clause. 29 U.S.C. § 1144(b)(2)(A). Under that clause, nothing in ERISA "shall be construed to exempt or relieve any person from any law of any State which

9

regulates insurance." *Id.* This saving clause "reclaims a substantial amount of ground" for states to regulate. *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 364 (2002).

There is an exception to the saving clause known as the "deemer clause." *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 733 (1985). That clause provides that no employee-benefit plan "shall be deemed to be an insurance company . . . or to be engaged in the business of insurance …." 29 U.S.C. § 1144(b)(2)(B).

If the Court determines that the anti-steering regulations have a 'connection with" ERISA plans, then the plaintiffs agree that the savings clause applies, so the only dispute is whether the deemer clause exception to the saving clause applies. (Doc. 116, at 26.) It does not.

The plaintiffs emphasize the distinction between insured and self-funded plans. (Doc. 116, at 26-27.) This distinction, however, supports the Department's position because the distinction between insured and self-funded plans is like the distinction between plans that use a PBM and those that perform PBM functions in-house. The Supreme Court has acknowledged this distinction, stating "[w]e are aware that our decision results in a distinction between insured and uninsured plans, leaving the former open to indirect regulation while the latter are not." *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 733 (1985). Five years later, the Court reinforced the distinction, stating that "if a plan is insured, a State may regulate it indirectly through regulation of its insurer and its insurer's insurance contracts; if the plan is uninsured, the State may not regulate it." *FMC Corp. v. Halliday*, 498 U.S. 52, 64 (1990). When an ERISA plan sponsor chooses to perform an insurance-related function in-house, it is protected from state regulation. When

a plan sponsor chooses, however, to hire a third-party to do those insurance-related services, that choice does not absolve the third party of state regulatory requirements.

The plaintiffs argue that *Prudential Insurance Company of America v. National Park Medical Center,* 413 F.3d 897 (8th Cir. 2005) forecloses the Department's argument that the deemer clause does not apply in this situation. (Doc. 116 at 27-28.) The Department preserves its argument that *Prudential* misread the Supreme Court cases on which it relies. (Doc. 86, at 28-29.) But even adhering to *Prudential*, that case stands only for the proposition that self-insured ERISA plans cannot be regulated indirectly.

The anti-steering laws, in contrast, do not regulate self-insured ERISA plans at all. Those laws regulate only PBMs, and the record shows that PBMs ██████████████ ██████████████████. (Doc. 111, ¶ 2.) Those networks are ████████████ ████████████████████████ This differs from *Prudential*, where the plan sponsor was building its own network by maintaining "various agreements with insurance companies" to "provide the plan access to various provider networks," as opposed to wholesale delegation of benefit management to a third party on the third party's terms. 413 F.3d at 902.

The Supreme Court's decision in *Kentucky Association of Health Plans v. Miller* confirms this distinction. 538 U.S. 329 (2003). That case concerned preemption of an any-willing-provider regulation of HMOs, another type of third-party benefit manager. *Id.* at 332. Applying the saving clause, the Court held that such regulations were not preempted. *Id.* at 342. In a footnote, the Court considered and rejected the third-party benefit managers' argument that because the any-willing-provider regulation applied to self-insured plans,

11

the saving clause did not apply. *Id.* at 336 n.1. Beyond this footnote, however, *Miller* did not distinguish the types of plan sponsors being served in its analysis because it was is not relevant. The any-willing-provider law applied to the third-party benefit manager and was not preempted because the deemer clause only applies to statutes that directly regulate self-insured ERISA plans. The same is true of Minnesota's narrower anti-steering regulations.

## CONCLUSION

The non-PBM plaintiffs lack standing and all the plaintiffs' claims fail on the merits. The Court should grant the Department summary judgment.

12

Dated:  July 6, 2026

Respectfully submitted,

KEITH ELLISON
State of Minnesota
Attorney General

s/**Allen Cook Barr**

ALLEN COOK BARR (#0399094)
STEPHEN D. MELCHIONNE (#0391374)
Assistant Attorneys General

445 Minnesota Street, Suite 600
St. Paul, Minnesota 55101-2125
(651) 757-1487 (Voice)
(651) 297-1235 (Fax)
allen.barr@ag.state.mn.us
stephen.melchionne@ag.state.mn.us

ATTORNEYS FOR DEFENDANTS

|#6393855

13